Pavlina K. Rafter (SBN 304181)
rafter.pavlina@dorsey.com
**DORSEY & WHITNEY LLP**
600 Anton Boulevard, Suite 2000
Costa Mesa, CA 92626
Telephone: (714) 800-1400
Facsimile: (714) 800-1499

Edward B. Magarian (*pro hac vice forthcoming*)
magarian.edward@dorsey.com
Ian Blodger (*pro hac vice forthcoming*)
blodger.ian@dorsey.com
**DORSEY & WHITNEY LLP**
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600

Attorneys for Plaintiff
U.S. Bank National Association

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>HIGHWATER WEALTH, LLC; FALKO HOERNICKE; TIMOTHY DAVIDSON; MIKE ROOKUS; KRISTIAN FORSTER; AND BRIAN RISSMAN,<br><br>Defendants. | CASE NO. '26CV4430 GPC GC<br><br>**COMPLAINT FOR TRADE SECRET MISAPPROPRIATION, BREACH OF CONTRACT, TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, AND UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff U.S. Bank National Association ("U.S. Bank"), by and through its attorneys, and for its Complaint against HighWater Wealth, LLC ("HighWater") and former U.S. Bank employees Falko Hoernicke, Timothy Davidson, Mike Rookus, Kristian Forster, and Brian Rissman (the "Former Employees") (collectively "Defendants"), and hereby allege as follows:

## I. INTRODUCTION

1. This is an action for trade secret misappropriation, breach of employment and confidentiality agreements, tortious interference with economic advantage, breach of duty of loyalty, unfair competition, and defamation, arising out of Defendants' unlawful scheme to misappropriate U.S. Bank's highly valuable trade secrets in violation of their agreements, statutes, and regulations, and to later use those trade secrets to attempt to unfairly and improperly compete and harm U.S. Banks's market-leading and highly successful wealth management advice services.

2. U.S. Bank's knowledge and information concerning its clients' financial goals and plans are unique and valuable assets to U.S. Bank, including but not limited to customer and prospective customers' names, addresses, and telephone numbers; customers' investment portfolios and information concerning any investment activities; advisors' work product; U.S. Bank's existing banking or trust relationships; customer income, net worth, and other personal financial information; U.S. Bank business methods, operations, financing, pricing information; U.S. Bank's pending proposals and projects; research, development, and marketing strategies; and other confidential information. U.S. Bank's success depends on keeping this information confidential from its competitors.

3. To protect its trade secrets and confidential information, U.S. Bank enters Confidentiality and Non-Solicitation Agreements ("Confidentiality Agreements") with its employees and affiliates (including the Former Employees) as a condition of their continued employment, which among other protections provides that U.S. Bank employees would not directly or indirectly "utilize U.S. Bank's Confidential

Information to solicit, influence, or encourage any customers or prospective customers of U.S. Bank to divert or direct their business to me or any other person, association or entity by or with whom I am employed, associated, engaged as an agent or otherwise affiliated." **Exhibit A** ("Confidentiality Agreements"), ¶6 (iii).

4. The Former Employees misappropriated U.S. Bank's valuable trade secrets and confidential client information and engaged in pre-termination solicitation of U.S. Bank's customers in violation of their Confidentiality Agreements and common law duties, to illegitimately enter the financial wealth management industry on behalf of their newly-formed Registered Investment Advisor ("RIA"), HighWater. Defendants received an unfair head start by poaching U.S. Bank's employees and clients while the Former Employees remained employed by U.S. Bank and by later using confidential and trade secret information to solicit U.S. Bank's clients following their departure.

5. On Sunday evening, April 12, 2026, and on Monday morning, April 13, 2026, the Former Employees submitted resignation letters notifying U.S. Bank that they were "resigning from US Bancorp effective immediately." Each of the Former Employees listed HighWater email addresses for their contact information for any clients or individuals who asked U.S. Bank how to contact them.

6. Prior to their resignation, Mr. Rissman, Mr. Forrester, and Mr. Rookus were private wealth advisors for U.S. Bank.

7. Prior to their resignation, Mr. Falko and Mr. Davidson were portfolio managers for U.S. Bank.

8. U.S. Bank has learned that Former Employees made phone calls and even house visits to some U.S. Bank clients prior to the Former Employees' resignations and shortly after resigning, in an effort to solicit these U.S. Bank clients to leave U.S. Bank for HighWater. These clients had tens of millions in assets under management with U.S. Bank and represented a significant source of revenue.

9. U.S. Bank learned of Defendants' solicitation efforts when some of these

clients informed U.S. Bank of Former Employees' contact prior to and just following their resignation from U.S. Bank. U.S. Bank has since further obtained solicitation emails from Former Employees, demonstrating that they attempted to poach U.S. Bank clients on behalf of HighWater and with HighWater's support and approval.

10. U.S. Bank has also conducted a preliminary forensic review of the Former Employees' computer activity prior to their departure. This forensic review to date (but which is ongoing) has shown that Former Employees repeatedly accessed U.S. Bank's confidential client information in the days leading up to their resignation. Their accessing this information was not for any legitimate business purpose. For example, there is no legitimate business reason for the Defendants to access U.S. Bank trade secrets, including significant confidential client account information in the business hours before their resignation. The only purpose to do so is to use that confidential information in connection with trying to interfere with U.S. Bank's relationship with its clients and move them to their new firm.

11. U.S. Bank has further obtained information from certain clients that the Former Employees have defamed U.S. Bank by making false and disparaging remarks regarding, among other things, U.S. Bank's compliance with its obligations to transfer funds at a client's request.

12. The continued misappropriation, disclosure, and use of U.S. Bank's confidential information and trade secrets to wrongfully solicit U.S. Bank clients and employees and disparagement of U.S. Bank will cause damage to U.S. Bank and its customers, and it will also have the effect of harming U.S. Bank by denying it the right to control its trade secrets, proprietary and confidential information, and development efforts and technology from theft by employees, some of whom continue to leave for HighWater as of the time of this Complaint.

13. For example, Defendants' pre-termination solicitation of U.S. Bank clients included efforts by Mr. Forester to solicit father-and-son clients to leave U.S. Bank and join HighWater; Mr. Forester and Mr. Hoernicke hosting a dinner to

announce to a group of U.S. Bank clients their intent to leave U.S. Bank for Highwater, in an apparent attempt to recruit these clients for HighWater; and Mr. Davidson's solicitation phone calls to his U.S. Bank clients, which were concealed from U.S. Bank.

14. As a result, U.S. Bank has been forced to bring this action to enforce its valuable trade secrets and its Confidentiality Agreements with Defendants to prevent further harm.

## II. PARTIES

15. Plaintiff U.S. Bank National Association is an Ohio national banking association, with its headquarters located at 800 Nicollet Mall, Minneapolis, Minnesota 55402.

16. Defendant HighWater Wealth, LLC. is incorporated under the laws of the State of California and maintains its principal prince of business in this district at 16789 Bernardo Center Drive, San Diego, California 92128.

17. On information and belief the Former Employees are the members of HighWater Wealth, LLC.

18. On information and belief, the Former Employees in this matter work within this District for HighWater.

19. On information and belief, Falko Hoernicke is an individual who works for HighWater as Chief Investment Officer & Founding Partner, and resides in Santa Barbara, California.

20. On information and belief, Timothy Davidson is an individual who works for HighWater as Director of Investments & Founding Partner, and resides in Irvine, California.

21. On information and belief, Mike Rookus is an individual who works for HighWater as President & Founding Partner, and resides in San Diego, California.

22. On information and belief, Kristian Forster is an individual who works for HighWater as Chief Executive Officer & Founding Partner, and resides in San Diego, California.

23. On information and belief, Brian Rissman is an individual who works for HighWater as Relationship Manager & Founding Partner, and resides in Palm Desert, California.

## III. JURISDICTION, VENUE & INTRADISTRICT ASSIGNMENT

24. This Court has subject matter jurisdiction over U.S. Bank's claims pursuant to 28 U.S.C. § 1332, as Plaintiff is diverse in its citizenship from all defendants and the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorney fees.

25. This Court also has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff has asserted claims under the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836-1839 et seq.

26. The Court has supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367.

27. Venue is appropriate in this district because a substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in this District, as HighWater's principal place of business is located in this District.

28. On information and belief, all of the individual defendants remain employed at HighWater's principal place of business, and therefore at least a substantial part of the misconduct they committed was in this District.

29. At least 2 of the individual defendants also appear to reside within this District. Venue therefore lies in the United States District Court for the Southern District of California pursuant to 28 U.S.C. §§ 1391(b)(1) and (2).[1]

/ / /

/ / /

/ / /

[1] Mr. Rookus's Confidentiality Agreement contains a forum selection clause identifying Minnesota as the appropriate forum for disputes arising under the Agreement. For the sake of judicial efficiency, U.S. Bank is waiving that provisions for purposes of this dispute, given that this venue is otherwise appropriate for the claims against him and all other Defendants. *See* Exhibit A.

## IV. FACTUAL ALLEGATIONS

**Former Employees Use U.S. Bank's Trade Secrets and Confidential Information to Found HighWater and Unfairly Compete Against U.S. Bank**

30. Former Employees founded and incorporated HighWater on April 11, 2026. HighWater describes itself as wealth management firm specifically servicing wealthy and ultra-wealthy investors. *See* HighWater, SERVICES, https://highwaterwealth.com/#Services (last accessed July 13, 2026). On information and belief, HighWater performs identical or substantially similar services as U.S. Bank, in direct competition with U.S. Bank in the Southern California market.

31. Within a day or two of HighWater's founding on April 11, 2026, the Former Employees resigned their employment with U.S. Bank "effective immediately" on April 12 and April 13 to join HighWater as Founding Partners.

32. On information and belief, the Former Employees work in identical or substantially similar roles for HighWater as they did for U.S. Bank.

33. HighWater's website claims that despite the fact it was formed as a company on April 11, 2026, and despite its key employees resigning from their employment with U.S. Bank on April 12 and 13th, that it already has "$1.6B Assets under Advisement." *Id.*

34. Thus, on information and belief, these five employees' departure was a significant and coordinated effort by Defendants to recruit a team of U.S. Bank advisors in possession of U.S. Bank's proprietary trade secrets and Confidential Information, to misappropriate U.S. Bank trade secrets and Confidential Information and wrongfully compete for U.S. Bank clients. This recruitment and misappropriation effort allowed Defendants to shortcut their entry into the market as HighWater, instead of legitimately developing its own business strategies and products.

35. Indeed, U.S. Bank already knows Defendants engaged in unlawful solicitation of U.S. Bank customers.

36. U.S. Bank learned from a client, (which for purposes of preserving the

client's confidentiality, U.S. Bank will refer to as "Client 1")—that during Mr. Forester's employment with U.S. Bank, he solicited one of U.S. Bank's clients prior to Mr. Forester's termination.

37. On information and belief, Defendants purposefully kept Client 1's account "in cash" (rather than in investments), to keep that money liquid. This had the effect of making Client 1's assets easier to transfer from U.S. Bank to HighWater, to the detriment of U.S. Bank. Thus, Defendants intentionally steered business away from U.S. Bank for Defendants, while employed by U.S. Bank.

38. Shortly following his departure from U.S. Bank, using his pre-termination violation of his agreement and in breach of duty of loyalty as well as the related confidential information he accessed, Mr. Forester then solicited Client 1's son, Client 2, who is also a client of U.S. Bank, asking him to leave U.S. Bank and join HighWater.

39. On or about February 2026, while still employed by U.S. Bank, Mr. Forester and Mr. Hoernicke met with Client 3 (a medical doctor), and several other medical doctor clients over dinner to notify the group that they would be leaving U.S. Bank for HighWater. The purpose of this meeting was apparently to recruit U.S. Bank clients for HighWater. U.S. Bank learned of this meeting when a client in attendance of the dinner informed U.S. Bank that the meeting had occurred and that February was the first time Mr. Forester and Mr. Hoernicke revealed their intention to leave U.S. Bank for HighWater.

40. Mr. Davidson also made a telephone call to another U.S. Bank client, Client 3, to solicit that client's business for HighWater prior to his departure from U.S. Bank. To conceal his solicitation efforts from U.S. Bank, Mr. Davidson fabricated a reason to visit this client in-person prior to leaving US Bank.

41. On or about the week of April 6–10, 2026, just a few days prior to his resignation on April 13, Mr. Davidson had a phone call with more U.S. Bank clients, Client 4 and Client 5, to discuss leaving U.S. Bank to join him at HighWater. The account owned by the clients at issue totaled $4 million in assets under management.

42. Based upon U.S. Bank employees subsequent service of Former Employees' clients, U.S. Bank learned that Former Employees attempted to solicit U.S. Bank clients on behalf of HighWater, seemingly in teams.

43. On information and belief, and prior to their departure, Mr. Rookus and Mr. Hoernicke solicited at least five U.S. Bank clients they serviced within the last year of their employment with U.S. Bank for business with HighWater.

44. On information and belief, and prior to their departure, Mr. Rissman and Mr. Davidson solicited at least three U.S. Bank clients they serviced within the last year of their employment with U.S. Bank for business with HighWater.

45. Upon learning of the Former Employees' solicitation of U.S. Bank clients prior to their resignation from employment, U.S. Bank conducted and continues to conduct a preliminary forensic review of the Former Employees' computer activity prior to their departure.

46. This forensic review has shown that the Former Employees repeatedly accessed U.S. Bank's confidential client information in the week immediately prior to their resignation for the apparent purpose of obtaining confidential information, for later use in soliciting U.S. Bank's clients on behalf of themselves and HighWater.

47. First, the forensic review showed that the Former Employees had accessed Salesforce (U.S. Bank's client management relationship software) in uncharacteristically high numbers just prior to their departure. Mr. Davidson in particular had accessed Salesforce on numerous occasions in the days just prior to his resignation, despite having no reason to access that software in his role as a portfolio manager.

48. Second, the current forensic review shows that the Former Employees had accessed U.S. Bank's gift logs, which included information showing what gifts U.S. Bank gave to its clients and when. There was no legitimate U.S. Bank business purpose to access these logs.

49. Third, the forensic review demonstrated that the Former Employees

pulled information about their book of business with U.S. Bank clients.

50. Based upon the Former Employees' simultaneous resignation from their U.S. Bank employment; Mr. Forester, Mr. Hoernicke, and Mr. Davidson's pre-termination solicitation of U.S. Bank clients; and the continuing forensic review indicating the Former Employees' access to U.S. Bank's confidential client information just prior to their resignation, U.S. Bank believes each Defendant intended to take U.S. Bank's confidential client information and use it to solicit U.S. Bank clients for HighWater.

**The Importance of Trade Secrets and Confidentiality in the Wealth Management Industry**

51. U.S. Bank offers industry-leading wealth management and advisement for individual investors, including for wealthy and ultra-wealthy clients.

52. U.S. Bank clients receive one-on-one guidance from their advisors, who in turn receive support by a team of U.S. Bank specialists with expertise in different areas of wealth management, such as banking and trusts and estates. U.S. Bank's personalized approach to wealth management allows U.S. Bank to provide its clients the convenience of a single point of contact while receiving the support of an entire wealth team's knowledge of the industry.

53. Maintaining trade secrets and confidentiality are of paramount importance throughout the wealth advice and management industry, but particularly for U.S. Bank's personalized point-of-contact approach to wealth management. Thus, U.S. Bank acquires this confidential information and trade secrets at great expense and any disclosure and use of information

54. Furthermore, U.S. Bank operates in an industry that is heavily regulated by the Securities and Exchange Commission, FINRA, and state and local insurance regulators. Like all financial services firms, U.S. Bank is subject to myriad state and federal securities laws and regulations. One of the most heavily regulated aspects of U.S. Bank's business is client privacy and the protection of client information.

55. For example, 17 C.F.R. § 248.1 et seq.—also known as the SEC's "Regulation S-P"—mandates that broker-dealers like U.S. Bank

> must adopt written policies and procedures that address administrative, technical, and physical safeguards for the protection of customer records and information. These written policies and procedures must be reasonably designed to: (1) Insure the security and confidentiality of customer records and information; (2) Protect against any anticipated threats or hazards to the security or integrity of customer records and information; and (3) Protect against unauthorized access to or use of customer records or information that could result in substantial harm or inconvenience to any customer.

17 C.F.R. § 248.30.

56. This is not a rule U.S. Bank is free to take lightly or ignore—the SEC rigorously investigates violations of Regulation S-P and is quick to impose sanctions for violations. Indeed, the SEC takes the position that once a registered representative terminates his or her affiliation with a firm, the representative's use of customer information for any purpose without the customer's express prior consent is a violation of Regulation S-P, which may subject the representative to disciplinary action. *See, e.g.*, U.S. SECURITIES AND EXCHANGE COMMISSION, SEC Charges Brokerage Executives With Failing to Protect Confidential Customer Information (April 7, 2011), https://www.sec.gov/news/press/2011/2011-86.htm; OFFICE OF COMPLIANCE INSPECTIONS AND EXAMINATIONS, Investment Adviser and Broker-Dealer Compliance Issues Related to Regulation S-P – Privacy Notices and Safeguard Policies (April 16, 2019), https://www.sec.gov/files/OCIE%20Risk%20Alert%20-%20Regulation%20S-P.pdf.

57. In addition to its regulatory guidance, the SEC's enforcement actions also confirm that departing advisors are not allowed to retain confidential client information. For example, in *In re Next Financial Group*, an administrative law judge found in favor of the SEC against a financial services firm that failed to comply with Regulation S-P and other securities laws governing what information departing

advisors could take with them. 2008 SEC LEXIS 1393 (June 18, 2008). In sanctioning the firm, the ALJ emphasized that departing advisors were not allowed "to retain copies of customer files and documents and to provide that information to the successor broker or dealer. The files and documents include information such as customer names, addresses, Social Security numbers, birth dates, account numbers, and banking information." *Id.* at *33-34 (emphasis added) (citations omitted).

58. U.S. Bank takes its obligations under Regulation S-P and related client privacy laws seriously, taking extensive measures to safeguard sensitive client information. U.S. Bank expects its financial advisors to comply with these requirements and includes strong privacy commitments in its agreements with financial advisors, including the Former Employees.

59. To protect its confidential information, trade secrets, and client relationships, U.S. Bank includes robust confidentiality provisions in its agreements with financial advisors. In particular, the Former Employees were required to maintain the secrecy of the confidential information they obtained through their affiliation with U.S. Bank and not use that information for their own personal benefit during or after their affiliation with U.S. Bank. U.S. Bank also has enacted compliance policies which the Former Employees were legally and contractually bound to follow.

60. Among other measures, U.S. Bank has written intellectual property security policies and guidelines regarding the use of its confidential information, along with the signed employment and confidentiality agreements akin to the Confidentiality Agreements at issue here. U.S. Bank invests substantially in various types of technology to secure its information, including secure facilities, limited electronic access to certain types of trade secret, confidential and proprietary software, and other security measures to safeguard its trade secrets and confidential information, including but not limited to firewalls, proxies, Internet address screening programs and other security systems to assure the safety and security of U.S. Bank's networks. Access to U.S. Bank's facilities, networks, research, and other information is severely restricted.

Employees are not allowed to move information from their U.S. Bank-issued computers to any non-U.S. Bank computer equipment.

61. U.S. Bank's Confidential Agreements define Confidential Information to include without limitation:

(i) the names, addresses, and telephone numbers of its customers and prospective customers (collectively "customers"), the investment portfolios of its customers and any information concerning customers' past, present or future investment activities, any documents or records reflecting work in process, and any information relating to U.S. Bank's customers' banking or trust relationships, customers' income, net worth or other business or personal financial information;

(ii) any information concerning U.S. Bank's methods, operations, financing, services, pricing information, compensation data, pending projects and proposals, research and development strategies, production reports, financial and marketing information, technological developments, software, computer systems, techniques, processes, as well as policy or procedure manuals or training materials; and

(iii) any other secret or confidential information relating to the products, services, customers, sales, technology and business affairs of U.S. Bank. Ex. A, ¶ 1.

62. Upon Former Employees' resignation from U.S. Bank, Defendants has no legitimate access to any of U.S. Bank's Confidential Information or the trade secrets associated with them.

**The Former Employees' Agreements**

63. U.S. Bank communicates in writing to its employees that all competitive information is confidential and not to be disclosed outside the company, and that such

obligations last beyond their employment. In addition to the various security measures U.S. Bank takes to protect its confidential information, U.S. Bank also requires its employees to sign confidentiality agreements, and requires exiting employees to return all U.S. Bank property (including confidential information) before leaving.

64. At the start and as a condition of continued employment, all of the Former Employees signed their Confidentiality Agreement with U.S. Bank requiring them not to disclose any potentially trade secret, confidential or proprietary information.

65. In Paragraph 3, the Former Employees agreed:

> Except as required in the ordinary course of U.S. Bank's business, I will not at any time either during or subsequent to my employment with U.S. Bank, remove Confidential Information, whether in original, duplicated or copied form, from the premises of U.S. Bank. I will keep Confidential Information secret and in strict confidence during and subsequent to my employment with U.S. Bank and will not use any such information or disclose, either directly or indirectly, any such information to any person, firm corporation, association, or other entity, expect to the extent such use or disclosure: i. is necessary for the performance of my duties; ii. is required by applicable law; or iii. is authorized in writing by an Executive Vice President of U.S. Bank. Ex. A, ¶ 3.

66. The Confidentiality Agreements provided that Former Employees would "immediately return all U.S. Bank property, and all documents and materials of any nature containing any Confidential Information" to U.S. Bank "without retaining copies." *Id.* at ¶ 5 (*or* ¶ 4 for Rookus Agreement).

67. The Former Employees agreed during the term of their employment, that they would not "utilize U.S. Bank's Confidential Information to solicit, influence, or encourage any customers or prospective customers of U.S. Bank to divert or direct their business to me or any other person, association or entity by or with whom I am employed, associated, engaged as agent or otherwise affiliated." *Id.* at ¶ 6(iii) (or ¶ 5(iii) for Rookus Agreement).

68. The Former Employees also agreed in their Confidentiality Agreements,

"[D]uring the term of my employment with U.S. Bank, and for a period of one year thereafter, I will not use Confidential Information to, directly or indirectly, encourage, induce or entice any employee of U.S. Bank to leave U.S. Bank's employment." *Id.* at ¶ 7 (*or* ¶ 6 for Rookus Agreement).

69. Mr. Hoernicke, signed his Confidentiality Agreement, dated August 16, 2021.

70. Mr. Davidson, signed his Confidentiality Agreement, dated June 2, 2023.

71. Mr. Rookus, signed his Confidentiality Agreement, dated October 21, 2015. Mr. Rookus's Confidentiality Agreement additionally contains a choice-of-law provision, providing, "The enforceability and interpretation of this Agreement shall be governed by the laws of the State of Minnesota regardless of any conflicts of law principles of that State or any other State to the contrary." *Id.,* Rookus Agreement, ¶ 10.

72. Mr. Forster, signed his Confidentiality Agreement, dated July 13, 2018.

73. Mr. Rissman, signed an Employment Agreement, dated December 12, 2019.

74. Collectively, the Former Employees have over 30 years of experience working for U.S. Bank. They were in key roles where they were regularly exposed to U.S. Bank trade secrets and Confidential Information in a very competitive market, which is why U.S. Bank took industry-standard and appropriate measures to protect such information from competitors. Each and every Former Employee was required to adhere to these restrictions.

**Defendants' Continued Use Confidential Information and Disparaging Remarks**

75. On information and belief, the Former Employees have continued to use U.S. Bank's confidential client information to solicit U.S. Bank's clients on behalf of HighWater, following their resignations.

76. As just one example, Mr. Davidson shared non-public information about a U.S. Bank employee's impending planned retirement to a U.S. Bank client. The

retiring U.S. Bank employee did not yet have a chance to share his retirement plans with U.S. Bank clients at the time of Mr. Davidson's disclosure, and Mr. Davidson had used this information to induce the client to join HighWater.

77. On information and belief, the Former Employees' post-termination efforts have also included making disparaging and false comments to U.S. Bank clients, for the purpose of harming these clients' business relationships with U.S. Bank.

78. For example, on or about May 18, 2026, U.S. Bank has learned that Client 6 was "advised" that his transfer of funds from U.S. Bank to HighWater was allegedly made more difficult and protracted than necessary, on the basis of the Former Employees' departure from U.S. Bank to HighWater. On information and belief, Mr. Rookus (who serviced Client 6 for U.S. Bank and now services Client 6 for HighWater) was the individual who stated to Client 6 that U.S. Bank had made the transfer process more difficult than necessary.

79. Mr. Rookus's statement was false and was harmful to U.S. Bank, including its continued relationship with Client 6. Indeed, Client 6 specifically provided, on the basis of these disparaging remarks made to him, that U.S. Bank risked irreparable damage to their decades-long, great business relationship with Client 6.

80. HighWater already claims to have $1.6 billion "assets under advisement," despite forming a few months ago. *See* HighWater, SERVICES, https://highwaterwealth.com/#Services (last accessed August 3, 2026). Another recent industry publication claims that HighWater oversees "approximately $2.4 billion in advisory assets." *See* Investment News, "LPL Financial adds $2.4 billion San Diego team as recruiting pace hits yearly high" (July 14, 2026), available at https://www.investmentnews.com/independent-broker-dealers/lpl-financial-adds-24-billion-san-diego-team-as-recruiting-pace-hits-yearly-high/267396.

81. Thus, given all of the information gathered to date and to be gathered during discovery, U.S. Bank believes Defendants intend to build their business by poaching preexisting relationships obtained and developed through connections and

expense on behalf of U.S. Bank, in violation of trade secrets laws and contractual obligations of the Former Employees.

82. These efforts represent tens of millions of dollars in damages to U.S. Bank.

**U.S. Bank's Efforts to Protect its Trade Secrets, Confidential Information, and Business Relationships**

83. On April 20, 2026, U.S. Bank's counsel sent a correspondence to the Former Employees via email and Federal Express ("the Joint Letter"), reminding the Former Employees of their obligations under the Confidentiality Agreement, informing them of U.S. Bank's on-going investigation of any potential breach of the Agreement and misappropriation of trade secrets by them, and requesting the Former Employees preserve documents and confirm their compliance with the Confidentiality Agreement.

84. The Joint Letter specifically requested that each of the Former Employees, by close of business on April 21, 2026, "confirm that you did not retain or take with you, and therefore no longer have in your possession, custody or control, any Confidential Information from U.S. Bank, including any client related information."

85. The Joint Letter received no response from the Former Employees by the close of business on April 21.

86. On April 23, 2026, U.S. Bank's counsel sent another correspondence via email requesting a substantive response to the Joint Letter, providing, "[W]e have received information which leads us to believe that one or more of you may have taken confidential information in violation of your contractual and legal obligations. It also appears repeated calls have been made to clients on a do not call list." Accordingly, U.S. Bank reiterated its request for confirmation from Former Employees that no breach of the Confidentiality Agreement was made, writing, "The confirmations we requested are not complicated and we demanded that you substantively respond

without further delay. Not included in the initial letter is a demand, which I make here now, for each of your phone passcodes." The April 23 correspondence also requested the Former Employees confirm they were represented by counsel.

87. On April 28, 2026, the Former Employees' counsel confirmed his representation via email to U.S. Bank's counsel. The Former Employees' counsel also alleged that did not solicit U.S. Bank clients while still employed by U.S. Bank and "did not utilize any U.S. Bank confidential information in connection with any solicitations as you allege." Importantly, Former Employees' counsel never made the confirmations requested by the Joint Letter—that is, that each Former Employee confirm that they did not retain or take with them, and therefore no longer have in their possession, custody or control, any Confidential Information from U.S. Bank, including any client related information."

88. Thus, no Defendant has substantively confirmed that Defendants have not improperly retained U.S. Bank Confidential Information or trade secrets. Despite Former Employees' evasive contentions to the contrary, on information and belief, Defendants have not stopped their efforts to unfairly compete against U.S. Bank or confirm to U.S. Bank that they have taken such steps to prevent any misappropriation of U.S. Bank's proprietary trade secrets or Confidential Information.

89. On information and belief, none of the Former Employees has taken any affirmative steps to demonstrate that any are in compliance with his obligations to U.S. Bank.

**U.S. Bank Will Be Greatly Harmed If Defendants Continue to Wrongfully Compete and Misappropriate U.S. Bank Trade Secrets**

90. U.S. Bank is a well-known and trusted wealth management firm with decades of experience and innovation in the industry. It has spent these decades developing business strategies and fostering relationships with its clients. Former Employees utilized U.S. Bank's business strategies, Confidential Information, and business relationships to develop their own client relationships on behalf of U.S. Bank,

representing accounts totaling tens of millions of dollars. If Defendants are not enjoined from misappropriating this Confidential Information in service of poaching U.S. Bank clients, it will cause severe and irreparable harm to U.S. Bank.

91. All of the Former Employees recognize the value of the Confidential Information that they were granted access to and signed their Confidentiality Agreements acknowledging the same.

92. U.S. Bank goes to great lengths to protect its trade secrets and Confidential Information. U.S. Bank is at risk if Defendants are allowed to use this information and destroy the trade secret and confidential nature of this information.

93. U.S. Bank brings this action to preserve its valuable rights, to prevent Defendants from unfairly competing by retaining and using U.S. Bank's trade secrets and Confidential Information, to obtain injunctive relief already recognized as necessary by the Former Employees in their agreements with U.S. Bank, as well as compensation for any damages based on Defendants' wrongful conduct.

## **FIRST CAUSE OF ACTION**

### **Trade Secret Misappropriation Under the Federal Defend Trade Secrets Act (DTSA), 18 U.S.C. §§ 1836-1839 et seq.**

### **(All Defendants)**

94. U.S. Bank incorporates all of the above paragraphs as though fully set forth herein.

95. U.S. Bank owns and possesses certain trade secret, confidential, and proprietary information that is protected by the DTSA, as alleged above. Such information includes U.S. Bank's strategic business information, non-public client information, and sales and marketing information.

96. U.S. Bank took reasonable steps to protect and maintain the secrecy of its trade secrets and confidential information, including requiring its employees to agree to keep such information confidential in the Confidentiality Agreements.

97. U.S. Bank's trade secrets and confidential information relate to products

and services used in interstate and foreign commerce. U.S. Bank's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

98. In violation of U.S. Bank's rights under the DTSA, 18 U.S.C. § 1836, Defendants misappropriated U.S. Bank's trade secrets, confidential, and proprietary information in the improper and unlawful manner alleged herein. Defendants' misappropriation of U.S. Bank's trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive. For example, Defendants have used, and continue to use, this misappropriated information to solicit U.S. Bank clients on behalf of Defendants.

99. As the direct and proximate result of Defendants' conduct, U.S. Bank has suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm and significant damages.

100. Because U.S. Bank's remedy at law is inadequate, U.S. Bank seeks, in addition to damages, preliminary and permanent injunctive relief to recover and protect its trade secrets, confidential and proprietary information and to protect other legitimate business interests. U.S. Bank's business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

101. U.S. Bank is entitled to an award of exemplary damages and attorneys' fees.

## SECOND CAUSE OF ACTION

### Aiding and Abetting Trade Secret Misappropriation Under the Federal Defend Trade Secrets Act (DTSA), 18 U.S.C. §§ 1836-1839 et seq.

### (All Defendants)

102. U.S. Bank incorporates all of the above paragraphs as though fully set forth therein.

103. U.S. Bank owns and possesses certain trade secret, confidential, and

proprietary information that is protected by the U.S. Bank, as alleged above. Such information includes U.S. Bank's strategic business information, non-public client information, and sales and marketing information.

104. U.S. Bank took reasonable steps to protect and maintain the secrecy of its trade secrets and confidential information, including requiring its employees to agree to keep such information confidential in the Confidentiality Agreements.

105. U.S. Bank's trade secret and confidential information relates to products and services used in interstate and foreign commerce. U.S. Bank's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

106. In violation of U.S. Bank's rights under the DTSA, 18 U.S.C. § 1836, Defendants misappropriated U.S. Bank's trade secrets, confidential, and proprietary information in the improper and unlawful manner alleged herein. Defendants' misappropriation of U.S. Bank's trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

107. Defendants aided and abetted the misappropriation by the other Defendants within the meaning of 18 U.S.C. § 1836, to the benefit of HighWater and Former Employees, for example by utilizing this confidential information to solicit U.S. Bank clients on behalf of Defendants.

108. As the direct and proximate result of Defendants' misappropriation, U.S. Bank has suffered damage within the meaning of 18 U.S.C. § 1836(b)(3)(B)(i)(I) in an amount not yet determined.

109. Because U.S. Bank's remedy at law is inadequate, U.S. Bank seeks, in addition to damages, preliminary and permanent injunctive relief to recover and protect its trade secrets, confidential and proprietary information and to protect other legitimate business interests. U.S. Bank's business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

110. U.S. Bank is entitled to an award of exemplary damages and attorneys' fees.

## THIRD CAUSE OF ACTION

### Trade Secret Misappropriation Under the California Uniform Trade Secrets Act (CUTSA), Cal. Civ. Code § 3426, et seq.

### (All Defendants)

111. U.S. Bank incorporates all of the above paragraphs as though fully set forth herein.

112. U.S. Bank owns and possesses certain trade secret, confidential, and proprietary information that is protected by the CUTSA, as alleged above. Such information includes U.S. Bank's strategic business information, non-public client information, and sales and marketing information.

113. U.S. Bank's trade secret, confidential, and proprietary information is the subject of efforts that are reasonable under the circumstances to maintain the secrecy, including requiring its employees to agree to keep such information confidential in Confidentiality Agreements.

114. U.S. Bank's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

115. In violation of U.S. Bank's rights, Defendants misappropriated U.S. Bank's trade secrets, confidential, and proprietary information in the improper and unlawful manner alleged herein. Defendants' misappropriation of U.S. Bank's trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive. For example, Defendants have used, and continue to use, this misappropriated information to solicit U.S. Bank clients on behalf of Defendants.

116. As the direct and proximate result of Defendants' conduct, U.S. Bank has suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe

competitive harm, and significant damages, in an amount to be proven at trial.

117. Because U.S. Bank's remedy at law is inadequate, U.S. Bank seeks, in addition to damages, preliminary and permanent injunctive relief to recover and protect its trade secrets, confidential and proprietary information and to protect other legitimate business interests. U.S. Bank's business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

118. Defendants' conduct was willful, malicious and fraudulent. U.S. Bank is entitled to exemplary damages under California Civil Code § 3426.3(c).

119. U.S. Bank is entitled to an award of attorneys' fees for Defendants' misappropriation of trade secrets, pursuant to California Civil Code § 3426.4.

## FOURTH CAUSE OF ACTION

**Aiding and Abetting Trade Secret Misappropriation Under the California Uniform Trade Secrets Act (CUTSA), Cal. Civ. Code § 3426, et seq.**

**(All Defendants)**

120. U.S. Bank incorporates all of the above paragraphs as though fully set forth therein.

121. U.S. Bank owns and possesses certain trade secret, confidential, and proprietary information that is protected by the CUTSA, as alleged above. Such information includes U.S. Bank's strategic business information, non-public client information, and sales and marketing information.

122. U.S. Bank took reasonable steps to protect and maintain the secrecy of its trade secrets and confidential information, including requiring its employees to agree to keep such information confidential in the Confidentiality Agreements.

123. U.S. Bank's trade secret and confidential information relates to products and services used in interstate and foreign commerce. U.S. Bank's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

124. In violation of U.S. Bank's rights, Defendants misappropriated U.S. Bank's trade secrets, confidential, and proprietary information in the improper and unlawful manner alleged herein. Defendants' misappropriation of U.S. Bank's trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

125. Defendants aided and abetted the misappropriation by the other Defendants within the meaning of California Civil Code § 3426.1, to the benefit of HighWater and Former Employees, for example by utilizing this confidential information to solicit U.S. Bank clients on behalf of Defendants.

126. As the direct and proximate result of Defendants' conduct, U.S. Bank has suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm, and significant damages, in an amount to be proven at trial.

127. Defendants' conduct was willful, malicious and fraudulent. As the direct and proximate result of Defendants' misappropriation, U.S. Bank is entitled to exemplary damages under California Civil Code § 3426.3(c) in an amount not yet determined.

128. Because U.S. Bank's remedy at law is inadequate, U.S. Bank seeks, in addition to damages, preliminary and permanent injunctive relief to recover and protect its trade secrets, confidential and proprietary information and to protect other legitimate business interests. U.S. Bank's business operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

129. U.S. Bank is entitled to an award of attorneys' fees for Defendants' misappropriation of trade secrets, pursuant to California Civil Code § 3426.4.

## FIFTH CAUSE OF ACTION

**Breach of Contract**

**(Against Defendants Falko Hoernicke, Timothy Davidson, Kristian Forster, and Brian Rissman)**

130. U.S. Bank incorporates all of the above paragraphs as though fully set

forth herein.

131. The Confidentiality Agreements for Falko Hoernicke, Timothy Davidson, Kristian Forster, and Brian Rissman, are valid and enforceable.

132. Pursuant to the Confidentiality Agreements, Falko Hoernicke, Timothy Davidson, Mike Rookus, Kristian Forster, and Brian Rissman (the "Former Employees") agreed not to retain, disclose, or divulge, directly or indirectly, any of U.S. Bank's trade secret, confidential or proprietary information.

133. The Former Employees breached the Confidentiality Agreements by improperly retaining, using, and/or disclosing U.S. Bank's trade secret, confidential or proprietary information, including to utilize this information to solicit U.S. Bank clients on behalf of Defendants.

134. Upon information and belief, the Former Employees are still in possession of U.S. Bank's trade secret, confidential or proprietary information and continue to use it to solicit U.S. Bank clients on behalf of Defendants.

135. As a direct and proximate result of the Former Employees' breach of the Confidentiality Agreements, U.S. Bank has been and is being harmed. U.S. Bank is entitled to damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

**Breach of Contract**

**(Against Defendant Mike Rookus)**

136. U.S. Bank incorporates all of the above paragraphs as though fully set forth herein.

137. The Confidentiality Agreement for Mike Rookus (the "Rookus Agreement"), including without limitation provisions agreeing not to disclose U.S. Bank's Confidential Information and/or utilize U.S. Bank's Confidential Information to solicit, influence, or encourage customers or prospective customers of U.S. Bank to divert or direct their business to Mr. Rookus or any other person, association or entity, formed a valid and enforceable contract, and bound the parties to its terms.

138. The provisions of the Rookus Agreement protect U.S. Bank's legitimate business interests.

139. Mr. Rookus breached the Confidentiality Agreements by improperly retaining, using, and/or disclosing U.S. Bank's trade secret, confidential or proprietary information, including to utilize this information to solicit U.S. Bank clients on behalf of Defendants.

140. Upon information and belief, Mr. Rookus is still in possession of U.S. Bank's trade secret, confidential or proprietary information and continues to use it to solicit U.S. Bank clients on behalf of Defendants.

141. As a direct and proximate result of Mr. Rookus's breach of the Confidentiality Agreements, U.S. Bank has been and is being harmed. U.S. Bank is entitled to damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### Breach of Common Law Duty of Loyalty

### (Against Defendants Falko Hoernicke, Timothy Davidson, Mike Rookus, Kristian Forster, and Brian Rissman)

142. U.S. Bank incorporates all of the above paragraphs as though fully set forth herein.

143. During their employment with U.S. Bank, Defendants Falko Hoernicke, Timothy Davidson, Mike Rookus, Kristian Forster, and Brian Rissman (the "Former Employees") owed U.S. Bank a duty of loyalty, which prohibited them from soliciting U.S. Bank's clients and otherwise competing with U.S. Bank, including without limitation by usurping U.S. Bank's corporate opportunities.

144. During their employment with U.S. Bank, the Former Employees breached their duty of loyalty to U.S. Bank by directly or indirectly soliciting U.S. Bank clients, including without limitation the U.S. Bank clients they formerly serviced on behalf of U.S. Bank, to transfer their accounts from U.S. Bank to HighWater; by diverting and/or attempting to divert the business of U.S. Bank clients; and/or by failing

to inform U.S. Bank of the Former Employees' or HighWater's solicitation of U.S. Bank clients.

145. As the direct and proximate result of Defendants' conduct, U.S. Bank suffered severe competitive harm and significant damages, in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

### Tortious Interference With Prospective Economic Advantage

### (Against Defendants Falko Hoernicke, Timothy Davidson, Mike Rookus, Kristian Forster, and Brian Rissman)

146. U.S. Bank incorporates all of the above paragraphs as though fully set forth herein.

147. U.S. Bank has contracts and economic relationships with its customers, including those known to and formerly serviced by the Former Employees as financial advisors. These contracts and economic relationships are of economic benefit to U.S. Bank and contain the likelihood of future economic advantages to U.S. Bank.

148. Defendants Falko Hoernicke, Timothy Davidson, Mike Rookus, Kristian Forster, and Brian Rissman (collectively the "Former Employees") all have knowledge of U.S. Bank's contracts and economic relationships with its customers, who were all in sales and advising roles at U.S. Bank.

149. Specifically, the Former Employees all have knowledge of specific customer lists, marketing plans, product information, including but not limited to cost, pricing, margins and other financial data, customer-related documents, sales methods for attracting and retaining customers, all of which were used by U.S. Bank to its economic advantage prior to their departure from U.S. Bank.

150. Former Employees tortiously interfered with the prospective economic advantage from this knowledge by founding HighWater to communicate and poach U.S. Bank's customers and prospective customers. HighWater does not have presently competitive client relationships to market and service in lieu of U.S. Bank's customer

base in Southern California, so these efforts are designed to harm U.S. Bank's market share. These efforts constitute a separate and actionable violation under California common law beyond the prior causes of action.

151. HighWater and Former Employees intentionally and willfully interfered, disrupted, or harmed these contract and economic relationships with U.S. Bank's customers and prospective customers by communicating about improper disclosure and/or use of U.S. Bank's trade secret, confidential or proprietary information.

152. As the direct and proximate result of Defendants' conduct, U.S. Bank has suffered and, if Defendants' conduct is not stopped, will continue to suffer, severe competitive harm and significant damages, in an amount to be proven at trial.

## NINTH CAUSE OF ACTION

### Unfair Competition Under California Business & Professions Code § 17200

### (All Defendants)

153. U.S. Bank incorporates all of the above paragraphs as though fully set forth herein.

154. Defendants unlawful and unfair acts alleged in the prior paragraphs herein constitute unfair competition under California Business & Professions Code Sections 17200 *et seq*.

155. To the extent that the improper acquisition of information that does not rise to level of a trade secret or breach of contract pursuant to the other causes of action, it constitutes unfair competition under California Business & Professions Code Sections 17200 *et seq*.

156. This includes, but is not limited to, publicly or privately informing U.S. Bank clients and prospective clients in the wealth management industry that HighWater is able to independently develop and provide competing services in the wealth management space, when in fact such development has only occurred because of the wrongful conduct by Defendants to recruit and jointly resign from U.S. Bank.

157. By virtue of this wrongful conduct, Defendants engaged in unfair

competition and/or unlawful business practices in violation of California Business & Professions Code Section 17200 *et seq*.

158. As the direct and proximate result of Defendants' conduct, U.S. Bank suffered severe competitive harm and significant damages, in an amount to be proven at trial.

**TENTH CAUSE OF ACTION**

**DEFAMATION**

**(Mike Rookus)**

159. U.S. Bank incorporates all of the above paragraphs as though fully set forth herein.

160. Mr. Rookus has made statements to U.S. Bank's clients that U.S. Bank has made the process for transferring client funds from U.S. Bank accounts to HighWater accounts "more difficult and protracted than needed."

161. Those statements are false, and were false when made, and/or falsely and intentionally implied that U.S. Bank made the transfer of funds away from U.S. Bank purposefully and needlessly protracted and difficult. In fact, U.S. Bank has and had no such intentions and remains willing and able to provide exceptional services to U.S. Bank clients, including making and facilitating authorized transfer of funds.

162. Therefore, such statements by Mr. Rookus are false and defamatory.

163. Such statements were not protected by any privilege.

164. As a direct and proximate result of such false and defamatory statements by Defendants, U.S. Bank has suffered and continues to suffer harm to its reputation and goodwill in its business relationships with U.S. Bank clients, resulting in significant damages.

**ELEVENTH CAUSE OF ACTION**

**Unjust Enrichment**

**(All Defendants)**

165. U.S. Bank incorporates all of the above paragraphs as though fully set

forth herein.

166. Defendants acquired benefits from U.S. Bank, including but not limited to its confidential business information and client business.

167. U.S. Bank expended great costs to develop this client business and confidential information for Defendants, including but not limited to training and development expenses on behalf of Defendants Hoernicke, Davidson, Rookus, Forster, and Rissman.

168. Defendants' retention of these benefits is inequitable and wrongful.

169. As the direct and proximate result of Defendants' conduct, U.S. Bank suffered severe competitive harm and significant damages, in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, U.S. Bank respectfully requests the following relief:

1. Judgment in U.S. Bank's favor and against Defendants on all causes of action alleged herein;
2. For damages in an amount to be further determined at trial;
3. For punitive damages;
4. For restitution;
5. For costs of suit incurred herein;
6. For prejudgment interest;
7. For preliminary and permanent injunctive relief prohibiting the use of U.S. Bank's confidential information;
8. For attorneys' fees and costs; and
9. For such other and further relief as the Court may deem to be just and proper.

/ / /

/ / /

/ / /

## DEMAND FOR JURY TRIAL

U.S. Bank hereby demands trial by jury for all causes of action, claims or issues in this action that are triable as a matter of right to a jury.

Dated: August 3, 2026

**DORSEY & WHITNEY LLP**

*/s/ Pavlina K. Rafter*
Pavlina K. Rafter
*Attorney for Plaintiff*
U.S. Bank National Association

# EXHIBIT A

**Confidentiality and Non-Solicitation Agreement- CA**

In consideration of U.S. Bank National Association, or its affiliated companies (hereinafter referred to as U.S. Bank), employing me, and in consideration of (a) the compensation to be paid to me by U.S. Bank, (b) the support services and facilities provided to me, (c) the access to confidential information provided to me, and (d) for other good and valuable consideration, I agree that:

1. I will treat as confidential all records of U.S. Bank whether in original, duplicated, copied, recorded, computerized or other form, that contain or refer to confidential or proprietary information of U.S. Bank or its customers (collectively "Confidential Information"), including without limitation the following:

    i. the names, addresses, and telephone numbers of its customers and prospective customers (collectively "customers"), the investment portfolios of its customers and any information concerning customers' past, present, or future investment activities, any documents or records reflecting work in process, and any information relating to U.S. Bank's customers' banking or trust relationships, customers' income, net worth or other business or personal financial information;

    ii. any information concerning U.S. Bank's methods, operations, financing, services, pricing information, compensation data, pending projects and proposals, research and development strategies, production reports, financial and marketing information, technological developments, software, computer systems, techniques, processes, as well as policy or procedure manuals or training materials; and

    iii. any other secret or confidential information relating to the products, services, customers, sales, technology and business affairs of U.S. Bank.

2. I recognize that such Confidential Information constitutes a unique and valuable asset of U.S. Bank acquired at great expense by U.S. Bank and any disclosure or other use of such information other than for the sole benefit of U.S. Bank would be wrongful and would cause irreparable harm to U.S. Bank.

3. Except as required in the ordinary course of U.S. Bank's business, I will not, at any time either during or subsequent to my employment with U.S. Bank, remove Confidential Information, whether in original, duplicated or copied form, from the premises of U.S. Bank. I will keep Confidential Information secret and in strict confidence during and subsequent to my employment with U.S. Bank and will not use any such information or disclose, either directly or indirectly, any such information to any person, firm corporation, association, or other entity, except to the extent such use or disclosure:

    i. is necessary for the performance of my duties;

    ii. is required by applicable law; or

    iii. is authorized in writing by an Executive Vice President of U.S. Bank.

4. I further understand that this Agreement does not limit my ability to communicate with any government agencies or otherwise participate in any investigation or proceeding that may be conducted by any government agency, including providing documents or other information in connection with such investigation or proceeding, without notice to U.S. Bank.

5. In the event of my voluntary or involuntary termination from U.S. Bank, for any reason, I will immediately return all U.S. Bank property, and all documents and materials of any nature containing any Confidential Information, without retaining copies, including any original, computerized, electronic, or duplicated documents or materials or portions of documents or materials. I will also immediately deliver any and all such property, documents, and materials at any time upon the request of U.S. Bank.

6. I agree that during the term of my employment with U.S. Bank, and for a period of one year thereafter, I will not, directly or indirectly, on behalf of myself or on behalf of any other individual, association or entity, as an agent or otherwise:

    i. contact any of the customers of U.S. Bank for whom I directly performed any services or had any direct business contact for the purpose of soliciting business or inducing such client to acquire any product or service that currently is provided or under development by U.S. Bank from any entity other than U.S. Bank; or

    ii. contact any of the customers or prospective customers of U.S. Bank whose identity or other customer specific information I discovered or gained access to as a result of my access to U.S. Bank's Confidential Information for the purpose of soliciting or inducing any of such customers or prospective customers to acquire any product or service that currently is provided or under development by U.S. Bank from any entity other than U.S. Bank; or

    iii. utilize U.S. Bank's Confidential Information to solicit, influence, or encourage any customers or prospective customers of U.S. Bank to

divert or direct their business to me or any other person, association or entity by or with whom I am employed, associated, engaged as agent or otherwise affiliated.

7. I agree that during the term of my employment with U.S. Bank, and for a period of one year thereafter, I will not use Confidential Information to, directly or indirectly, encourage, induce or entice any employee of U.S. Bank to leave U.S. Bank's employment. I understand that none of my activities will be prohibited under paragraphs 5 and 6 if I prove that the action was taken without the use in any way of Confidential Information.

8. I agree that, following the termination of my employment with U.S. Bank and prior to my acceptance of any subsequent employment, I will notify any person, firm, corporation, association, or other entity with which I am offered employment of the existence of this Agreement and its terms.

9. I acknowledge that U.S. Bank may elect to provide another party, including any of my subsequent employers, with notice of this Agreement and an opinion about its applicability. While I reserve the right to also communicate my disagreement with such an opinion if I disagree, I recognize that U.S. Bank has a legitimate business interest in expressing its opinion, and I consent to it doing so. I will not assert any legal claim or cause of action based upon such conduct by U.S. Bank.

10. I understand that the restrictions contained in this Agreement are necessary to protect the business and goodwill of U.S. Bank, and I consider them to be reasonable for such purposes. I also understand and acknowledge that the breach of any provision of this Agreement shall result in substantial, irreparable injury and damage to U.S. Bank, that there is no adequate remedy at law for such breach, and therefore I consent to the issuance of a temporary restraining order or a preliminary injunction by a court to prohibit and enjoin the breach of any provision of this Agreement. I also acknowledge and agree that such relief will be in addition to any other remedies that may be available to U.S. Bank.

11. This Agreement and the rights and duties created hereunder are personal and will not be assignable or delegable by me. This Agreement shall be binding upon and inure to the benefit of both parties and their respective successors and permitted assigns, including any corporation or entity with which U.S. Bank may be merged or which may succeed to its assets or business. I consent that U.S. Bank may, at its option, assigns its rights and duties hereunder to any other person or entity in connection with any form of corporate reorganization, any sale or merger of all or part of U.S. Bank or any acquisition of U.S. Bank.

12. If any provision of this Agreement is held to be unenforceable, then this Agreement will be deemed amended to the extent necessary to render the otherwise unenforceable provision, and the rest of the Agreement, valid and enforceable. If a court declines to amend this Agreement as provided herein, the invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of the remaining provisions, which shall be enforced as if the offending provision had not been included in this Agreement.

13. All obligations under this Agreement will survive the termination of my employment with U.S. Bank.

14. This document contains the entire agreement of the parties with respect to its subject matter. It may not be changed orally, but only by an agreement in writing signed by me and an authorized representative of U.S. Bank. This Agreement supersedes any and all prior agreements and other understandings between me and U.S. Bank with respect to the matters addressed in this Agreement.

15. I understand that nothing in this Agreement requires me to continue employment with U.S. Bank for any particular length of time or requires that U.S. Bank continue to employ me for any particular length of time.

**NAME:** Falko Hoernicke **SSN:** XXX-XX-[redacted]

**I HAVE CAREFULLY REVIEWED THIS AGREEMENT PRIOR TO SIGNING IT, AND I UNDERSTAND ITS TERMS.**

**By electronically signing this document below, you:**

- **Agree that your initials, in conjunction with your personal password that you used to gain access to the system, will identify that record or transaction as yours.**
- **Agree that because an electronic record or transaction undertaken with your password will be attributed to you, it is essential that you keep it secure. You also agree that you will not disclose your password to another person.**
- **Understand that a record or signature may not be denied legal effect or enforceability solely because it is in electronic form.**

**Electronically signed by** FH **Date:** 8/16/2021

## Confidentiality and Non-Solicitation Agreement- CA

In consideration of U.S. Bank National Association, or its affiliated companies (hereinafter referred to as U.S. Bank), employing me, and in consideration of (a) the compensation to be paid to me by U.S. Bank, (b) the support services and facilities provided to me, (c) the access to confidential information provided to me, and (d) for other good and valuable consideration, I agree that:

1. I will treat as confidential all records of U.S. Bank whether in original, duplicated, copied, recorded, computerized or other form, that contain or refer to confidential or proprietary information of U.S. Bank or its customers (collectively "Confidential Information"), including without limitation the following:

    i. the names, addresses, and telephone numbers of its customers and prospective customers (collectively "customers"), the investment portfolios of its customers and any information concerning customers' past, present, or future investment activities, any documents or records reflecting work in process, and any information relating to U.S. Bank's customers' banking or trust relationships, customers' income, net worth or other business or personal financial information;

    ii. any information concerning U.S. Bank's methods, operations, financing, services, pricing information, compensation data, pending projects and proposals, research and development strategies, production reports, financial and marketing information, technological developments, software, computer systems, techniques, processes, as well as policy or procedure manuals or training materials; and

    iii. any other secret or confidential information relating to the products, services, customers, sales, technology and business affairs of U.S. Bank.

2. I recognize that such Confidential Information constitutes a unique and valuable asset of U.S. Bank acquired at great expense by U.S. Bank and any disclosure or other use of such information other than for the sole benefit of U.S. Bank would be wrongful and would cause irreparable harm to U.S. Bank.

3. Except as required in the ordinary course of U.S. Bank's business, I will not, at any time either during or subsequent to my employment with U.S. Bank, remove Confidential Information, whether in original, duplicated or copied form, from the premises of U.S. Bank. I will keep Confidential Information secret and in strict confidence during and subsequent to my employment with U.S. Bank and will not use any such information or disclose, either directly or indirectly, any such information to any person, firm corporation, association, or other entity, except to the extent such use or disclosure:

    i. is necessary for the performance of my duties;

    ii. is required by applicable law; or

    iii. is authorized in writing by an Executive Vice President of U.S. Bank.

4. I further understand that this Agreement does not limit my ability to communicate with any government agencies or otherwise participate in any investigation or proceeding that may be conducted by any government agency, including providing documents or other information in connection with such investigation or proceeding, without notice to U.S. Bank.

5. In the event of my voluntary or involuntary termination from U.S. Bank, for any reason, I will immediately return all U.S. Bank property, and all documents and materials of any nature containing any Confidential Information, without retaining copies, including any original, computerized, electronic, or duplicated documents or materials or portions of documents or materials. I will also immediately deliver any and all such property, documents, and materials at any time upon the request of U.S. Bank.

6. I agree that during the term of my employment with U.S. Bank, and for a period of one year thereafter, I will not, directly or indirectly, on behalf of myself or on behalf of any other individual, association or entity, as an agent or otherwise:

    i. contact any of the customers of U.S. Bank for whom I directly performed any services or had any direct business contact for the purpose of soliciting business or inducing such client to acquire any product or service that currently is provided or under development by U.S. Bank from any entity other than U.S. Bank; or

    ii. contact any of the customers or prospective customers of U.S. Bank whose identity or other customer specific information I discovered or gained access to as a result of my access to U.S. Bank's Confidential Information for the purpose of soliciting or inducing any of such customers or prospective customers to acquire any product or service that currently is provided or under development by U.S. Bank from any entity other than U.S. Bank; or

    iii. utilize U.S. Bank's Confidential Information to solicit, influence, or encourage any customers or prospective customers of U.S. Bank to

divert or direct their business to me or any other person, association or entity by or with whom I am employed, associated, engaged as agent or otherwise affiliated.

7. I agree that during the term of my employment with U.S. Bank, and for a period of one year thereafter, I will not use Confidential Information to, directly or indirectly, encourage, induce or entice any employee of U.S. Bank to leave U.S. Bank's employment. I understand that none of my activities will be prohibited under paragraphs 5 and 6 if I prove that the action was taken without the use in any way of Confidential Information.

8. I agree that, following the termination of my employment with U.S. Bank and prior to my acceptance of any subsequent employment, I will notify any person, firm, corporation, association, or other entity with which I am offered employment of the existence of this Agreement and its terms.

9. I acknowledge that U.S. Bank may elect to provide another party, including any of my subsequent employers, with notice of this Agreement and an opinion about its applicability. While I reserve the right to also communicate my disagreement with such an opinion if I disagree, I recognize that U.S. Bank has a legitimate business interest in expressing its opinion, and I consent to it doing so. I will not assert any legal claim or cause of action based upon such conduct by U.S. Bank.

10. I understand that the restrictions contained in this Agreement are necessary to protect the business and goodwill of U.S. Bank, and I consider them to be reasonable for such purposes. I also understand and acknowledge that the breach of any provision of this Agreement shall result in substantial, irreparable injury and damage to U.S. Bank, that there is no adequate remedy at law for such breach, and therefore I consent to the issuance of a temporary restraining order or a preliminary injunction by a court to prohibit and enjoin the breach of any provision of this Agreement. I also acknowledge and agree that such relief will be in addition to any other remedies that may be available to U.S. Bank.

11. This Agreement and the rights and duties created hereunder are personal and will not be assignable or delegable by me. This Agreement shall be binding upon and inure to the benefit of both parties and their respective successors and permitted assigns, including any corporation or entity with which U.S. Bank may be merged or which may succeed to its assets or business. I consent that U.S. Bank may, at its option, assigns its rights and duties hereunder to any other person or entity in connection with any form of corporate reorganization, any sale or merger of all or part of U.S. Bank or any acquisition of U.S. Bank.

12. If any provision of this Agreement is held to be unenforceable, then this Agreement will be deemed amended to the extent necessary to render the otherwise unenforceable provision, and the rest of the Agreement, valid and enforceable. If a court declines to amend this Agreement as provided herein, the invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of the remaining provisions, which shall be enforced as if the offending provision had not been included in this Agreement.

13. All obligations under this Agreement will survive the termination of my employment with U.S. Bank.

14. This document contains the entire agreement of the parties with respect to its subject matter. It may not be changed orally, but only by an agreement in writing signed by me and an authorized representative of U.S. Bank. This Agreement supersedes any and all prior agreements and other understandings between me and U.S. Bank with respect to the matters addressed in this Agreement.

15. I understand that nothing in this Agreement requires me to continue employment with U.S. Bank for any particular length of time or requires that U.S. Bank continue to employ me for any particular length of time.

---

**NAME:** Timothy Davidson **SSN:** XXX-XX-[redacted]

---

**I HAVE CAREFULLY REVIEWED THIS AGREEMENT PRIOR TO SIGNING IT, AND I UNDERSTAND ITS TERMS.**

**By electronically signing this document below, you:**

- **Agree that your initials, in conjunction with your personal password that you used to gain access to the system, will identify that record or transaction as yours.**
- **Agree that because an electronic record or transaction undertaken with your password will be attributed to you, it is essential that you keep it secure. You also agree that you will not disclose your password to another person.**
- **Understand that a record or signature may not be denied legal effect or enforceability solely because it is in electronic form.**

**Electronically signed by** td **Date:** 6/2/2023

---

504838

usbank

# CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT

In consideration of U.S. Bank National Association, or its affiliated companies (hereinafter referred to as U.S. Bank), employing me, and in consideration of (a) the compensation to be paid to me by U.S. Bank, (b) the support services and facilities provided to me, (c) the access to confidential information provided to me, and (d) for other good and valuable consideration, I agree that:

1. I will treat as confidential all records of U.S. Bank whether in original, duplicated, copied, recorded, computerized or other form, that contain or refer to confidential or proprietary information of U.S. Bank or its customers (collectively "Confidential Information"), including without limitation the following:

   (i) the names, addresses, and telephone numbers of its customers and prospective customers (collectively "customers"), the investment portfolios of its customers and any information concerning customers' past, present, or future investment activities, any documents or records reflecting work in process, and any information relating to U.S. Bank's customers' banking or trust relationships, customers' income, net worth or other business or personal financial information;

   (ii) any information concerning U.S. Bank's methods, operations, financing, services, pricing information, compensation data, pending projects and proposals, research and development strategies, production reports, financial and marketing information, technological developments, software, computer systems, techniques, processes, as well as policy or procedure manuals or training materials; and

   (iii) any other secret or confidential information relating to the products, services, customers, sales, technology and business affairs of U.S. Bank.

2. I recognize that such Confidential Information constitutes a unique and valuable asset of U.S. Bank acquired at great expense by U.S. Bank and any disclosure or other use of such information other than for the sole benefit of U.S. Bank would be wrongful and would cause irreparable harm to U.S. Bank.

3. Except as required in the ordinary course of U.S. Bank's business, I will not, at any time either during or subsequent to my employment with U.S. Bank, remove Confidential Information, whether in original, duplicated or copied form, from the premises of U.S. Bank. I will keep Confidential Information secret and in strict confidence during and subsequent to my employment with U.S. Bank and will not use any such information or disclose, either directly or indirectly, any such information to any person, firm corporation, association, or other entity, except to the extent such use or disclosure:

   (i) is necessary for the performance of my duties;

504838

usbank

(ii) is required by applicable law; or

(iii) is authorized in writing by an Executive Vice President of U.S. Bank.

4. In the event of my voluntary or involuntary termination from U.S. Bank, for any reason, I will immediately return all U.S. Bank property, and all documents and materials of any nature containing any Confidential Information, without retaining copies, including any original, computerized, electronic, or duplicated documents or materials or portions of documents or materials. I will also immediately deliver any and all such property, documents, and materials at any time upon the request of U.S. Bank.

5. I agree that during the term of my employment with U.S. Bank, and for a period of one year thereafter, I will not, directly or indirectly, on behalf of myself or on behalf of any other individual, association or entity, as an agent or otherwise:

(i) contact any of the customers of U.S. Bank for whom I directly performed any services or had any direct business contact for the purpose of soliciting business or inducing such client to acquire any product or service that currently is provided or under development by U.S. Bank from any entity other than U.S. Bank; or

(ii) contact any of the customers or prospective customers of U.S. Bank whose identity or other customer specific information I discovered or gained access to as a result of my access to U.S. Bank's Confidential Information for the purpose of soliciting or inducing any of such customers or prospective customers to acquire any product or service that currently is provided or under development by U.S. Bank from any entity other than U.S. Bank; or

(iii) utilize U.S. Bank's Confidential Information to solicit, influence, or encourage any customers or prospective customers of U.S. Bank to divert or direct their business to me or any other person, association or entity by or with whom I am employed, associated, engaged as agent or otherwise affiliated.

6. I agree that during the term of my employment with U.S. Bank, and for a period of one year thereafter, I will not use Confidential Information to, directly or indirectly, encourage, induce or entice any employee of U.S. Bank to leave U.S. Bank's employment. I understand that none of my activities will be prohibited under paragraphs 5 and 6 if I prove that the action was taken without the use in any way of Confidential Information.

7. I agree that, following the termination of my employment with U.S. Bank and prior to my acceptance of any subsequent employment, I will notify any person, firm, corporation, association, or other entity with which I am offered employment of the existence of this Agreement and its terms.

504838

usbank

8. I acknowledge that U.S. Bank may elect to provide another party, including any of my subsequent employers, with notice of this Agreement and an opinion about its applicability. While I reserve the right to also communicate my disagreement with such an opinion if I disagree, I recognize that U.S. Bank has a legitimate business interest in expressing its opinion, and I consent to it doing so. I will not assert any legal claim or cause of action based upon such conduct by U.S. Bank.

9. I understand that the restrictions contained in this Agreement are necessary to protect the business and goodwill of U.S. Bank, and I consider them to be reasonable for such purposes. I also understand and acknowledge that the breach of any provision of this Agreement shall result in substantial, irreparable injury and damage to U.S. Bank, that there is no adequate remedy at law for such breach, and therefore I consent to the issuance of a temporary restraining order or a preliminary injunction by a court to prohibit and enjoin the breach of any provision of this Agreement. I also acknowledge and agree that such relief will be in addition to any other remedies that may be available to U.S. Bank.

10. The enforceability and interpretation of this Agreement shall be governed by the laws of the State of Minnesota regardless of any conflicts of law principles of that State or any other State to the contrary. Venue for all disputes between the parties, including those related to this Agreement, shall be with a state or federal court located within Hennepin County, Minnesota.

11. This Agreement and the rights and duties created hereunder are personal and will not be assignable or delegable by me. This Agreement shall be binding upon and inure to the benefit of both parties and their respective successors and permitted assigns, including any corporation or entity with which U.S. Bank may be merged or which may succeed to its assets or business. I consent that U.S. Bank may, at its option, assigns its rights and duties hereunder to any other person or entity in connection with any form of corporate reorganization, any sale or merger of all or part of U.S. Bank or any acquisition of U.S. Bank.

12. If any provision of this Agreement is held to be unenforceable, then this Agreement will be deemed amended to the extent necessary to render the otherwise unenforceable provision, and the rest of the Agreement, valid and enforceable. If a court declines to amend this Agreement as provided herein, the invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of the remaining provisions, which shall be enforced as if the offending provision had not been included in this Agreement.

13. All obligations under this Agreement will survive the termination of my employment with U.S. Bank.

14. This document contains the entire agreement of the parties with respect to its subject matter. It may not be changed orally, but only by an agreement in writing signed by me and an authorized representative of U.S. Bank. This Agreement supersedes any and all

usbank

prior agreements and other understandings between me and U.S. Bank with respect to the matters addressed in this Agreement.

15. I understand that nothing in this Agreement requires me to continue employment with U.S. Bank for any particular length of time or requires that U.S. Bank continue to employ me for any particular length of time.

I HAVE CAREFULLY REVIEWED THIS AGREEMENT PRIOR TO SIGNING IT, AND I UNDERSTAND ITS TERMS.

Michael Rookus Jr
Print Your Full Legal Name Here

[signature]
Signature

10/21/15
Date

*NOTE: As a condition of employment this document must be signed and all pages (4 of 4) returned to Human Resources* ***prior*** *to starting employment.*

*Please return the signed document to HRConnection at:*

**Fax: (855) 269-5508**
**Or**
**Email: hrra@usbank.com**

Please direct all questions to HRConnection at **(800) 806-7009** and follow the Recruitment prompts.

**Confidentiality and Non-Solicitation Agreement- CA**

In consideration of U.S. Bank National Association, or its affiliated companies (hereinafter referred to as U.S. Bank), employing me, and in consideration of (a) the compensation to be paid to me by U.S. Bank, (b) the support services and facilities provided to me, (c) the access to confidential information provided to me, and (d) for other good and valuable consideration, I agree that:

1. I will treat as confidential all records of U.S. Bank whether in original, duplicated, copied, recorded, computerized or other form, that contain or refer to confidential or proprietary information of U.S. Bank or its customers (collectively "Confidential Information"), including without limitation the following:

    i. the names, addresses, and telephone numbers of its customers and prospective customers (collectively "customers"), the investment portfolios of its customers and any information concerning customers' past, present, or future investment activities, any documents or records reflecting work in process, and any information relating to U.S. Bank's customers' banking or trust relationships, customers' income, net worth or other business or personal financial information;

    ii. any information concerning U.S. Bank's methods, operations, financing, services, pricing information, compensation data, pending projects and proposals, research and development strategies, production reports, financial and marketing information, technological developments, software, computer systems, techniques, processes, as well as policy or procedure manuals or training materials; and

    iii. any other secret or confidential information relating to the products, services, customers, sales, technology and business affairs of U.S. Bank.

2. I recognize that such Confidential Information constitutes a unique and valuable asset of U.S. Bank acquired at great expense by U.S. Bank and any disclosure or other use of such information other than for the sole benefit of U.S. Bank would be wrongful and would cause irreparable harm to U.S. Bank.

3. Except as required in the ordinary course of U.S. Bank's business, I will not, at any time either during or subsequent to my employment with U.S. Bank, remove Confidential Information, whether in original, duplicated or copied form, from the premises of U.S. Bank. I will keep Confidential Information secret and in strict confidence during and subsequent to my employment with U.S. Bank and will not use any such information or disclose, either directly or indirectly, any such information to any person, firm corporation, association, or other entity, except to the extent such use or disclosure:

    i. is necessary for the performance of my duties;

    ii. is required by applicable law; or

    iii. is authorized in writing by an Executive Vice President of U.S. Bank.

4. I further understand that this Agreement does not limit my ability to communicate with any government agencies or otherwise participate in any investigation or proceeding that may be conducted by any government agency, including providing documents or other information in connection with such investigation or proceeding, without notice to U.S. Bank.

5. In the event of my voluntary or involuntary termination from U.S. Bank, for any reason, I will immediately return all U.S. Bank property, and all documents and materials of any nature containing any Confidential Information, without retaining copies, including any original, computerized, electronic, or duplicated documents or materials or portions of documents or materials. I will also immediately deliver any and all such property, documents, and materials at any time upon the request of U.S. Bank.

6. I agree that during the term of my employment with U.S. Bank, and for a period of one year thereafter, I will not, directly or indirectly, on behalf of myself or on behalf of any other individual, association or entity, as an agent or otherwise:

    i. contact any of the customers of U.S. Bank for whom I directly performed any services or had any direct business contact for the purpose of soliciting business or inducing such client to acquire any product or service that currently is provided or under development by U.S. Bank from any entity other than U.S. Bank; or

    ii. contact any of the customers or prospective customers of U.S. Bank whose identity or other customer specific information I discovered or gained access to as a result of my access to U.S. Bank's Confidential Information for the purpose of soliciting or inducing any of such customers or prospective customers to acquire any product or service that currently is provided or under development by U.S. Bank from any entity other than U.S. Bank; or

    iii. utilize U.S. Bank's Confidential Information to solicit, influence, or encourage any customers or prospective customers of U.S. Bank to

divert or direct their business to me or any other person, association or entity by or with whom I am employed, associated, engaged as agent or otherwise affiliated.

7. I agree that during the term of my employment with U.S. Bank, and for a period of one year thereafter, I will not use Confidential Information to, directly or indirectly, encourage, induce or entice any employee of U.S. Bank to leave U.S. Bank's employment. I understand that none of my activities will be prohibited under paragraphs 5 and 6 if I prove that the action was taken without the use in any way of Confidential Information.

8. I agree that, following the termination of my employment with U.S. Bank and prior to my acceptance of any subsequent employment, I will notify any person, firm, corporation, association, or other entity with which I am offered employment of the existence of this Agreement and its terms.

9. I acknowledge that U.S. Bank may elect to provide another party, including any of my subsequent employers, with notice of this Agreement and an opinion about its applicability. While I reserve the right to also communicate my disagreement with such an opinion if I disagree, I recognize that U.S. Bank has a legitimate business interest in expressing its opinion, and I consent to it doing so. I will not assert any legal claim or cause of action based upon such conduct by U.S. Bank.

10. I understand that the restrictions contained in this Agreement are necessary to protect the business and goodwill of U.S. Bank, and I consider them to be reasonable for such purposes. I also understand and acknowledge that the breach of any provision of this Agreement shall result in substantial, irreparable injury and damage to U.S. Bank, that there is no adequate remedy at law for such breach, and therefore I consent to the issuance of a temporary restraining order or a preliminary injunction by a court to prohibit and enjoin the breach of any provision of this Agreement. I also acknowledge and agree that such relief will be in addition to any other remedies that may be available to U.S. Bank.

11. This Agreement and the rights and duties created hereunder are personal and will not be assignable or delegable by me. This Agreement shall be binding upon and inure to the benefit of both parties and their respective successors and permitted assigns, including any corporation or entity with which U.S. Bank may be merged or which may succeed to its assets or business. I consent that U.S. Bank may, at its option, assigns its rights and duties hereunder to any other person or entity in connection with any form of corporate reorganization, any sale or merger of all or part of U.S. Bank or any acquisition of U.S. Bank.

12. If any provision of this Agreement is held to be unenforceable, then this Agreement will be deemed amended to the extent necessary to render the otherwise unenforceable provision, and the rest of the Agreement, valid and enforceable. If a court declines to amend this Agreement as provided herein, the invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of the remaining provisions, which shall be enforced as if the offending provision had not been included in this Agreement.

13. All obligations under this Agreement will survive the termination of my employment with U.S. Bank.

14. This document contains the entire agreement of the parties with respect to its subject matter. It may not be changed orally, but only by an agreement in writing signed by me and an authorized representative of U.S. Bank. This Agreement supersedes any and all prior agreements and other understandings between me and U.S. Bank with respect to the matters addressed in this Agreement.

15. I understand that nothing in this Agreement requires me to continue employment with U.S. Bank for any particular length of time or requires that U.S. Bank continue to employ me for any particular length of time.

---

**NAME:** Kristian Forster **SSN:** XXX-XX-[redacted]

---

**I HAVE CAREFULLY REVIEWED THIS AGREEMENT PRIOR TO SIGNING IT, AND I UNDERSTAND ITS TERMS.**

**By electronically signing this document below, you:**

- **Agree that your initials, in conjunction with your personal password that you used to gain access to the system, will identify that record or transaction as yours.**
- **Agree that because an electronic record or transaction undertaken with your password will be attributed to you, it is essential that you keep it secure. You also agree that you will not disclose your password to another person.**
- **Understand that a record or signature may not be denied legal effect or enforceability solely because it is in electronic form.**

**Electronically signed by** KCF **Date:** 7/13/2018

---

**Confidentiality and Non-Solicitation Agreement- CA**

In consideration of U.S. Bank National Association, or its affiliated companies (hereinafter referred to as U.S. Bank), employing me, and in consideration of (a) the compensation to be paid to me by U.S. Bank, (b) the support services and facilities provided to me, (c) the access to confidential information provided to me, and (d) for other good and valuable consideration, I agree that:

1. I will treat as confidential all records of U.S. Bank whether in original, duplicated, copied, recorded, computerized or other form, that contain or refer to confidential or proprietary information of U.S. Bank or its customers (collectively "Confidential Information"), including without limitation the following:

    i. the names, addresses, and telephone numbers of its customers and prospective customers (collectively "customers"), the investment portfolios of its customers and any information concerning customers' past, present, or future investment activities, any documents or records reflecting work in process, and any information relating to U.S. Bank's customers' banking or trust relationships, customers' income, net worth or other business or personal financial information;

    ii. any information concerning U.S. Bank's methods, operations, financing, services, pricing information, compensation data, pending projects and proposals, research and development strategies, production reports, financial and marketing information, technological developments, software, computer systems, techniques, processes, as well as policy or procedure manuals or training materials; and

    iii. any other secret or confidential information relating to the products, services, customers, sales, technology and business affairs of U.S. Bank.

2. I recognize that such Confidential Information constitutes a unique and valuable asset of U.S. Bank acquired at great expense by U.S. Bank and any disclosure or other use of such information other than for the sole benefit of U.S. Bank would be wrongful and would cause irreparable harm to U.S. Bank.

3. Except as required in the ordinary course of U.S. Bank's business, I will not, at any time either during or subsequent to my employment with U.S. Bank, remove Confidential Information, whether in original, duplicated or copied form, from the premises of U.S. Bank. I will keep Confidential Information secret and in strict confidence during and subsequent to my employment with U.S. Bank and will not use any such information or disclose, either directly or indirectly, any such information to any person, firm corporation, association, or other entity, except to the extent such use or disclosure:

    i. is necessary for the performance of my duties;

    ii. is required by applicable law; or

    iii. is authorized in writing by an Executive Vice President of U.S. Bank.

4. I further understand that this Agreement does not limit my ability to communicate with any government agencies or otherwise participate in any investigation or proceeding that may be conducted by any government agency, including providing documents or other information in connection with such investigation or proceeding, without notice to U.S. Bank.

5. In the event of my voluntary or involuntary termination from U.S. Bank, for any reason, I will immediately return all U.S. Bank property, and all documents and materials of any nature containing any Confidential Information, without retaining copies, including any original, computerized, electronic, or duplicated documents or materials or portions of documents or materials. I will also immediately deliver any and all such property, documents, and materials at any time upon the request of U.S. Bank.

6. I agree that during the term of my employment with U.S. Bank, and for a period of one year thereafter, I will not, directly or indirectly, on behalf of myself or on behalf of any other individual, association or entity, as an agent or otherwise:

    i. contact any of the customers of U.S. Bank for whom I directly performed any services or had any direct business contact for the purpose of soliciting business or inducing such client to acquire any product or service that currently is provided or under development by U.S. Bank from any entity other than U.S. Bank; or

    ii. contact any of the customers or prospective customers of U.S. Bank whose identity or other customer specific information I discovered or gained access to as a result of my access to U.S. Bank's Confidential Information for the purpose of soliciting or inducing any of such customers or prospective customers to acquire any product or service that currently is provided or under development by U.S. Bank from any entity other than U.S. Bank; or

    iii. utilize U.S. Bank's Confidential Information to solicit, influence, or encourage any customers or prospective customers of U.S. Bank to

divert or direct their business to me or any other person, association or entity by or with whom I am employed, associated, engaged as agent or otherwise affiliated.

7. I agree that during the term of my employment with U.S. Bank, and for a period of one year thereafter, I will not use Confidential Information to, directly or indirectly, encourage, induce or entice any employee of U.S. Bank to leave U.S. Bank's employment. I understand that none of my activities will be prohibited under paragraphs 5 and 6 if I prove that the action was taken without the use in any way of Confidential Information.

8. I agree that, following the termination of my employment with U.S. Bank and prior to my acceptance of any subsequent employment, I will notify any person, firm, corporation, association, or other entity with which I am offered employment of the existence of this Agreement and its terms.

9. I acknowledge that U.S. Bank may elect to provide another party, including any of my subsequent employers, with notice of this Agreement and an opinion about its applicability. While I reserve the right to also communicate my disagreement with such an opinion if I disagree, I recognize that U.S. Bank has a legitimate business interest in expressing its opinion, and I consent to it doing so. I will not assert any legal claim or cause of action based upon such conduct by U.S. Bank.

10. I understand that the restrictions contained in this Agreement are necessary to protect the business and goodwill of U.S. Bank, and I consider them to be reasonable for such purposes. I also understand and acknowledge that the breach of any provision of this Agreement shall result in substantial, irreparable injury and damage to U.S. Bank, that there is no adequate remedy at law for such breach, and therefore I consent to the issuance of a temporary restraining order or a preliminary injunction by a court to prohibit and enjoin the breach of any provision of this Agreement. I also acknowledge and agree that such relief will be in addition to any other remedies that may be available to U.S. Bank.

11. This Agreement and the rights and duties created hereunder are personal and will not be assignable or delegable by me. This Agreement shall be binding upon and inure to the benefit of both parties and their respective successors and permitted assigns, including any corporation or entity with which U.S. Bank may be merged or which may succeed to its assets or business. I consent that U.S. Bank may, at its option, assigns its rights and duties hereunder to any other person or entity in connection with any form of corporate reorganization, any sale or merger of all or part of U.S. Bank or any acquisition of U.S. Bank.

12. If any provision of this Agreement is held to be unenforceable, then this Agreement will be deemed amended to the extent necessary to render the otherwise unenforceable provision, and the rest of the Agreement, valid and enforceable. If a court declines to amend this Agreement as provided herein, the invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of the remaining provisions, which shall be enforced as if the offending provision had not been included in this Agreement.

13. All obligations under this Agreement will survive the termination of my employment with U.S. Bank.

14. This document contains the entire agreement of the parties with respect to its subject matter. It may not be changed orally, but only by an agreement in writing signed by me and an authorized representative of U.S. Bank. This Agreement supersedes any and all prior agreements and other understandings between me and U.S. Bank with respect to the matters addressed in this Agreement.

15. I understand that nothing in this Agreement requires me to continue employment with U.S. Bank for any particular length of time or requires that U.S. Bank continue to employ me for any particular length of time.

**NAME:** Brian Rissman **SSN:** XXX-XX-[redacted]

**I HAVE CAREFULLY REVIEWED THIS AGREEMENT PRIOR TO SIGNING IT, AND I UNDERSTAND ITS TERMS.**

**By electronically signing this document below, you:**

- **Agree that your initials, in conjunction with your personal password that you used to gain access to the system, will identify that record or transaction as yours.**
- **Agree that because an electronic record or transaction undertaken with your password will be attributed to you, it is essential that you keep it secure. You also agree that you will not disclose your password to another person.**
- **Understand that a record or signature may not be denied legal effect or enforceability solely because it is in electronic form.**

**Electronically signed by** br **Date:** 12/12/2019